1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11

REBECCA ZAHOUREK,

No. 1:23-cv-01150-SKO

12

Petitioner,

**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**

13

v.

14

MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY, [1]

(Doc. 1)

15

16

Defendant.

17

18

19

20

21

22

23

24

25

## I.    INTRODUCTION

Plaintiff Rebecca Zahourek ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

26

27

28

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").
[2] The parties have consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Doc. 8).

## II.        BACKGROUND

Plaintiff was born on June 12, 1968.  (Administrative Record ("AR") 293).  Plaintiff filed her claim for DIB on November 18, 2020, alleging a disability onset of date of May 1, 2020.  (AR 293, 316).   In her application, she alleged disability based on her "blind or low vision; chronic nerve pain; ability to walk decreased; neuropathy throughout body, arthritis arms, hands, elbows; fibromyalgia; chronic fatigue syndrome; migraines; shingles; and hepatitis c."   (AR 320). Plaintiff has a high-school education, and she previously worked as a truck driver.  (AR 308. 320).

### A.        Relevant Evidence of Record[3]

Plaintiff suffers from various ailments, including fibromyalgia, bilateral thumb CMC joint osteoarthritis, and bilateral knee meniscal tears.  (AR 931-92).  She reports chronic pain related to her fibromyalgia, which she often describes as a 10 on a 10-point scale.  (*See, e.g.*, AR 952).  She has been treated for major depressive disorder.  (AR 931).  Providers have noted she is depressed, dysphoric, anxious, irritable and/or tearful at medical appointments.  (*See, e.g.*, AR 444, 458, 462, 539, 543-44, 550). On occasion, she has reported suicidal ideation.  (AR 990).  Plaintiff testified to extreme limitations related to her fibromyalgia and depression.  (*See* AR 80-92).  She stated that she cannot work because she is in pain "24/7," with no "good days." (AR 82).  She reported that she could not clean, dress herself, or exercise.  (AR 82-83).

### B.        The ALJ's Decision

Plaintiff filed a previous claim for DIB on January 22, 2018, alleging a disability onset date of July 27, 2017.  (AR 97).  The Commissioner denied her application initially on March 21, 2018, and upon reconsideration on August 10, 2018.  (AR 97).  Plaintiff requested a hearing before an Administrative Law Judge (an "ALJ"), and the parties attended a hearing on April 20, 2020. (AR 97).  In a decision dated April 30, 2020, the ALJ found that Plaintiff was not disabled as defined by the Act after conducting the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 97-108).  The Appeals Council denied review, and Plaintiff did not pursue a

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

1   further appeal.  (*See* AR 76).

2        Plaintiff filed the instant claim for DIB on November 18, 2020, alleging a disability onset

3   of date of May 1, 2020.  (AR 293, 316).   The Commissioner denied Plaintiff's application

4   initially on January 15, 2021, and again upon reconsideration on April 1, 2021.  (AR 139, 157).

5   Plaintiff requested a hearing before an ALJ, and the parties attended a hearing on June 22, 2022.

6   (AR 74).   No vocational experts testified at the hearing.  (AR 92).   The ALJ found that if he

7   credited Plaintiff's testimony, she could not sustain any jobs in the national economy.  (AR 92).

8   The ALJ left the record open to receive missing medical documentation.  (AR 92).  In a decision

9   dated August 16, 2022, the ALJ found that Plaintiff was not disabled as defined by the Act after

10  conducting the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 81-92).

11       At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since

12  May 5, 2020 (step one).  (AR 12-13).   At step two, the ALJ found Plaintiff suffers from the

13  following severe impairments: bilateral carpal tunnel syndrome (CTS); fibromyalgia; bilateral

14  thumb CMC joint osteoarthritis; and bilateral knee meniscal tears, status-post repair (20 CFR

15  404.1520(c)).  (AR 13).  Plaintiff did not have an impairment or combination of impairments that

16  met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

17  Appendix 1 ("the Listings") (step three).  (AR 15).

18       The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the

19  assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three

20  to step four, we assess your residual functional capacity . . . . We use this residual functional

21  capacity assessment at both step four and step five when we evaluate your claim at these steps.").

22  The ALJ found Plaintiff could perform the following:

23       lift/carry up to 50 pounds occasionally and lift/carry up to 25 pounds frequently;
     could sit for one hour at a time for a total of up to eight hours in an eight-hour

24

25  ---
     [4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work
26  setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES
     II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P
27  (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an
     individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's
28  RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence,
     and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable
     impairment.'"  *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

workday; could stand up to one hour at a time for a total of up to six hours in an eight-hour workday; could walk for one hour at a time for up to six hours in an eight-hour workday; requires a one hour sit/stand option; reaching in all directions is allowed continuously; bilateral handling is allowed continuously; bilateral fingering/feeling is allowed frequently; pushing and pulling of bilateral upper extremities is allowed continuously; bilateral lower extremity foot control operation is allowed frequently; she can occasionally climb ladders, ropes, or scaffolds; she can frequently climb ramps/stairs; she can frequently stoop and crouch; balancing, kneeling, and crawling are allowed continuously; and she can frequently operate a motor vehicle.

(AR 16).

At steps four, the ALJ found that Plaintiff could not perform any past relevant work and the transferability of job skills was not material because considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (AR 20-21). The ALJ based this finding on the testimony of the Vocational Expert ("VE"), who testified at Plaintiff's previous hearing that she could perform the following jobs: Office Helper (Dictionary of Occupational Titles ("DOT") 239.567-010)); Information Clerk (DOT 237.367-018); and Inspector (DOT 727.687-054) (AR 21). The ALJ concluded Plaintiff was not disabled under the Social Security Act. (AR 21-22).

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 30, 2023. (AR 1). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

## III.   LEGAL STANDARDS

### A.   Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only

4

unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends, *inter alia*, that the ALJ's RFC determination is not supported by substantial evidence because (1) the ALJ deprived of her due process rights; (2) the ALJ failed to find Plaintiff's mental impairment severe at Step Two; and (3) the ALJ offered insufficient

reasoning to discount Plaintiff's subjective complaints.  (Doc. 16 at 3).  The Court concludes the ALJ did not err in any of these respects.

## A.    The ALJ Did Not Deprive Plaintiff of Her Due Process Rights

### 1.    Legal Standard

Applicants for social security disability benefits are entitled to due process in the determination of their claims.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Ford*, 950 F.3d at 1158 n.12 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  "The Supreme Court has not set any fixed rule for determining the adequacy of process."  *Butler v. Apfel*, 144 F.3d 622, 626–27 (9th Cir. 1998).  "Rather, it has held that 'due process is flexible and calls for such procedural protections as the particular situation demands.'"  *Id.* (quoting *Mathews*, 424 U.S. at 334).

The Supreme Court has also made clear that the conduct of Social Security hearings "rests generally in the examiner's discretion" so long as the procedures are "fundamentally fair." *Richardson v. Perales*, 402 U.S. 389, 400, 401 (1971).  To succeed in showing due process violation, a social security claimant must show that "the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment."  *Bayliss v. Barnhart*, 427 F3d 1211, 1214–15 (9th Cir. 2005) (quoting *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001)) (internal quotations omitted).

### 2.    Analysis

Plaintiff has not shown that her hearing was not "fundamentally fair."  *Richardson*, 402 U.S. at 401.  Plaintiff contends the ALJ "relied on a vocational expert's testimony who was not present at the hearing in the present matter.  In so doing, the ALJ deprived Plaintiff of her due process rights to question witnesses.  This is error." (Doc. 16 at 7).  As the Defendant notes, however, Plaintiff questioned the VE at the previous hearing, and the same attorney represented her at both hearings.  (AR 34, 71-72, 74).  Because the ALJ found that Plaintiff's RFC had not changed from the previous hearing, he could rely on the previous VE testimony without offending

1  her due process rights.  *Sherman v. Astrue*, No. 05–16065, 2007 WL 1544614, at *1 (9th Cir.

2  2007) ("Because [Plaintiff's] RFC had not changed, the ALJ's reference to prior vocational expert

3  testimony that supported the earlier RFC finding did not deprive [Plaintiff] of the opportunity to

4  cross-examine the expert.  She had ample opportunity to cross-examine the expert when he

5  testified in the first instance and she declined to do so.").

6         Plaintiff also contends that while she in fact had the opportunity to question the VE at her

7  previous hearing,

8         …this does not alter the due process violation in failing to provide Plaintiff and her
       representative the opportunity to question the vocational expert given the
9        worsening of her condition as brought forth in Plaintiff's separate claim. Plaintiff's
       ability to be heard in relation to her current, separate claim was meaningfully
10       deprived by the ALJ's failure to obtain the testimony of a vocational expert in
       relation to Plaintiff's present claim.
11

12  (Doc. 16 at 7-8).  This argument, however, is misplaced.  Due process in the social security

13  context is "flexible," and "calls for such procedural protections as the particular situation

14  demands."  *Butler*, 144 F.3d at 626–27.  Although Plaintiff asserts the alleged error is harmful,

15  she has not established how it is harmful.  (Doc. 16 at 8).  For instance, Plaintiff does not

16  establish how the prior VE's testimony is insufficient, nor does she identify how the ultimate

17  nondisability determination was affected by the ALJ's reliance on prior VE testimony.  For these

18  reasons, Plaintiff has failed to show the ALJ's decision displayed a "clear inability to render fair

19  judgment."  *Bayliss*, 427 F3.d at 1214–15 (9th Cir. 2005).

20

21  **B.    The ALJ Did Not Harmfully Err by Finding Plaintiff's Mental Impairments
          Non-Severe**

22         **1.    Legal Standard**

23         "At step two of the five-step sequential inquiry, the Commissioner determines whether the

24  claimant has a medically severe impairment or combination of impairments."  *Smolen v. Chater*,

25  80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)).

26  "[A]t the step two inquiry, . . . the ALJ must consider the combined effect of all of the claimant's

27  impairments on her ability to function, without regard to whether each alone was sufficiently

28

severe." *Smolen*, 80 F.3d at 1290 (citing 42 U.S.C. § 423(d)(2)(B) and TITLES II & XVI: THE SEQUENTIAL EVALUATION PROCESS, Social Security Ruling ("SSR") 86-8 (S.S.A. 1986)).

"'[A]n impairment is not severe if it does not significantly limit [the claimant's] . . . ability to do basic work activities.'" *Smolen*, 80 F.3d at 1290 (citing 20 C.F.R. §§ 404.1520(c) & 404.1521(a)). "[B]asic work activities are the abilities and aptitudes necessary to do most jobs." TITLES II & XVI: MED. IMPAIRMENTS THAT ARE NOT SEVERE, SSR 85-28 (S.S.A. 1985). Examples of "basic work activities" include (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922(b).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an [individual's] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85–28). Additionally, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing SSR 85–28); *cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding that the claimant "failed to meet his burden of establishing disability" where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

"Great care should be exercised in applying the not severe impairment concept." SSR 85–28. "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Webb*, 433 F.3d at 687 (alteration in original) (quoting SSR 85–28).

Ultimately, "[t]he severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments

are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153.  In other words, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Yuckert*, 482 U.S. at 153–54).  "Nonetheless, '[t]he plaintiff has the burden of establishing the severity of the impairment.'" *Jennings v. Kijakazi*, No. 1:20–cv–01180–SKO, 2022 WL 209239, at *8 (E.D. Cal. Jan. 24, 2022); *see, e.g.*, *Burch*, 400 F.3d at 679 ("The claimant carries the initial burden of proving a disability in steps one through four of the analysis.") (citing *Swenson*, 876 F.2d at 687).

## 2.  Analysis

Plaintiff has not shown that the ALJ harmfully erred by finding her mental impairment non-severe.  Plaintiff contends the ALJ "ignored the majority of the medical evidence relating to Plaintiff's mental impairments" and improperly dismissed Dr. Ekram Michiel's opinion.  (Doc. 16 at 8-9).  Defendant states in a conclusory manner that there is substantial evidence to support the ALJ's finding that Plaintiff's mental impairments are not severe.  While Defendant does not concede error, he focuses his arguments on harm.  (*See* Doc. 17 at 5-7) ("The existence of an alternative interpretation of the evidence does not show that the ALJ erred.")  (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)).  Defendant concludes that Plaintiff cannot show that any error by the ALJ was harmful and would require remand.[5]  Accordingly, the remaining issue is whether Plaintiff was prejudiced.

A claimant is prejudiced at step two by an ALJ's omission of an impairment only where that step is not resolved in the claimant's favor.  *See Burch*, 400 F.3d at 682 ("Here, the ALJ did not find that Burch's obesity was a 'severe' impairment . . . . Assuming without deciding that this

---

[5] There appears to be substantial evidence to support the ALJ's finding.  While the inquiry is a de minimis screening, (*Smolen*, 80 F.3d at 1290), Plaintiff has the burden of establishing the severity of the impairment.  *Jennings*, No. 1:20–cv–01180–SKO, 2022 WL 209239, at *8 (E.D. Cal. Jan. 24, 2022).  Plaintiff's argument that her impairment is severe is at most a conclusory statement that the ALJ should have come to a different conclusion when evaluating the evidence, and "[i]f the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner."  *Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Even assuming arguendo that there was not substantial evidence to support the ALJ's finding that Plaintiff's mental impairments were not severe, as discussed, *supra,* any error is harmless.

1    omission constituted legal error, it could only have prejudiced Burch in step three (listing

2    impairment determination) or step five (RFC) because the other steps, including this one, were

3    resolved in her favor."); *see also Hickman v. Comm'r*, 399 F. App'x 300, 302 (9th Cir. 2010)

4    ("Any error in the ALJ's failure to include a reading disorder as one of Hickman's severe

5    impairments at step two of the analysis is harmless. The ALJ found Hickman suffered from other

6    severe impairments and, thus, step two was already resolved in Hickman's favor.").  The ALJ

7    resolved step two in Plaintiff's favoring, finding she suffered from severe impairments including

8    bilateral carpal tunnel syndrome (CTS); fibromyalgia; bilateral thumb CMC joint osteoarthritis;

9    and bilateral knee meniscal tears, status-post repair.  (AR 13).  It follows that, since Plaintiff's

10   claims were not screened out at this step, she was not prejudiced by any error in the step two

11   analysis.

12        Alternatively, if an ALJ errs at step two, that error is harmless if the ALJ considers the

13   impairment at issue in the RFC analysis.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

14   This is because "[t]he RFC . . . should be exactly the same regardless of whether certain

15   impairments are considered 'severe' or not."  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir.

16   2017).  "In fact, in assessing RFC, the adjudicator must consider limitations and restrictions

17   imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* (internal

18   quotations and alterations omitted); *see Michaud v. Saul*, No. 18-CV-02625-JLS-MDD, 2019 WL

19   5684411, at *3 (S.D. Cal. Nov. 1, 2019).

20        The ALJ specifically stated that he considered all Plaintiff's impairments, severe and non-

21   severe, in his analysis.  (AR 13) ("I considered all the claimant's medically determinable

22   impairments, including those that were non-severe, when assessing the claimant's residual

23   functional capacity.").  Therefore, Plaintiff has not demonstrated harmful error.  *See, e.g.*, *Sara*

24   *Ann W. v. Comm'r of Soc. Sec.*, No. 2:17-CV-00277-RHW, 2018 WL 4088771, at *4 (E.D. Wash.

25   Aug. 27, 2018) ("[T]he ALJ specifically noted that she considered all symptoms in assessing the

26   residual functional capacity. Accordingly, the Court finds the ALJ did not err in the step two

27   analysis, and if any error did occur it was harmless.").)

28        Plaintiff has also failed to identify any limitations resulting from her mental impairments

that are unaccounted for in her RFC.  Even assuming the ALJ was required to give greater weight to Dr. Michiel's opinion, [6]  Dr. Michiel concluded the following after assessing Plaintiff:

> From a psychiatric point of view, based upon the evaluation and observation throughout the interview, I believe the claimant is able to maintain attention and concentration to carry out simple job instructions.  The claimant is able to relate and interact with coworkers, supervisors and the general public while in the routine setting of performing simple job instructions.  The claimant is unable to maintain attention and concertation to carry out an extensive variety of technical and/or complex instructions.

(AR 446).  Plaintiff contends the ALJ's finding was harmful, "as there was no vocational expert at the present hearing and the vocational expert from the previous hearing was not questioned regarding *simple tasks*.  Therefore, the VE's testimony that Plaintiff could perform work in the national economy is unsupported by substantial evidence as it was elicited in response to an incomplete hypothetical."  (Doc. 16 at 12) (emphasis added).

To the extent that Plaintiff contends that the ALJ should have limited Plaintiff to "simple tasks" because of her mental impairments, the ALJ's RFC accounts for such a limitation.  The ALJ found Plaintiff was suited to "unskilled work" at step five (AR 21), and unskilled work requires "little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).  As Defendant notes, jobs that require Level Two reasoning are compatible with a limitation to simple tasks.  *Hernandez v. Berryhill*, 707 F. App'x 456, 459 (9th Cir. 2017).  Two of the three jobs listed in the ALJ's decision (Office Helper and Inspector) require Level Two reasoning, thereby limiting Plaintiff to simple tasks.  With a total of 105,000 jobs available nationally, these jobs also exist in significant numbers in the national economy to prevent a finding of disabled.  *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) (125,000 nationwide jobs significant); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (finding 25,000 nationwide jobs to be significant, but a "close call").  Plaintiff has failed to demonstrate she was harmed by any error at step two.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding that ALJ's error in not including bursitis as a severe impairment at step two was harmless in light of

---

[6] As Defendant notes, Dr. Michiel's opinion predated the relevant period by more than eight months (AR 293, 443-46), and ALJs are not required to consider opinions outside of the relevant period because they are not probative. *Burkett v. Berryhill*, 732 Fed.Appx. 547, 551 (9th Cir. 2018) (unpublished) (citing *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) and *Carmickle v. Comm'r, Soc. Sec.*, 533 F.3d 1155, 1165 (9th Cir. 2008)).

1    further analysis of that condition in the RFC).

2    **C.**      **The ALJ Offered Sufficient Reasons to Discount Plaintiff's Subjective Complaints**

3              In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

4    must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First,

5    the ALJ must determine whether the claimant has presented objective medical evidence of an

6    underlying impairment that could reasonably be expected to produce the pain or other symptoms

7    alleged.   *Id.*   The claimant is not required to show their impairment "could reasonably be

8    expected to cause the severity of the symptom [they] ha[ve] alleged; [they] need only show that it

9    could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter v. Astrue*,

10    504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence

11    of malingering, the ALJ can only reject the claimant's testimony about the severity of the

12    symptoms if they give "specific, clear and convincing reasons" for the rejection.  *Id.*   As the

13    Ninth Circuit has explained:

14              The ALJ may consider many factors in weighing a claimant's credibility,
          including (1) ordinary techniques of credibility evaluation, such as the claimant's
15          reputation for lying, prior inconsistent statements concerning the symptoms, and
          other testimony by the claimant that appears less than candid; (2) unexplained or
16          inadequately explained failure to seek treatment or to follow a prescribed course of
          treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported
17          by substantial evidence, the court may not engage in second-guessing.

18

19    *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v.*

20    *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ may

21    consider include a claimant's work record and testimony from physicians and third parties

22    concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v.*

23    *Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The clear and convincing standard is "not

24    an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'"

25    *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec.*

26    *Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).   General findings are not enough to satisfy this

27    standard; the ALJ "'must identify what testimony is not credible and what evidence undermines

28    the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting

1  *Lester*, 81 F.3d at 834).

2          **2.      Analysis**

3          Because the ALJ found Plaintiff's "medically determinable impairments reasonably could

4  be expected to cause the alleged symptoms," (AR 17) the only remaining issue is whether the

5  ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.

6  *See Vasquez*, 572 F.3d at 591.  Plaintiff contends the ALJ "fail[ed] to state a clear and convincing

7  reason for rejecting Plaintiff's testimony as the ALJ was not permitted to discount Plaintiff's

8  symptoms due to unsupportive objective medical evidence."  (Doc. 16 at 13).

9          The Court finds the ALJ properly discounted Plaintiff's subjective complaints.  Contrary

10  to Plaintiff's assertions, the ALJ may discount Plaintiff's subjective complaints solely because

11  they contradict the relevant medical evidence.  *Woods v. Comm'r of Soc. Sec. (Woods I)*, No.

12  1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of

13  objective medical evidence may not be the sole basis for rejection of symptom testimony,

14  inconsistency with the medical evidence or medical opinions can be sufficient.") (emphasis in

15  original).

16          While Plaintiff contends the ALJ simply provided a summary of the medical evidence

17  (Doc. 16 at 14), the ALJ indeed connected various medical evidence to the testimony it

18  undermined.  *See, e.g.*, AR 18 ("Overall, the doctor identified no more than mild changes in the

19  bilateral thumbs (Exhibit B3F, pp. 43-44).  Considering these findings, though these were based

20  on specialized tests and multiple other physical examinations that same month contained no

21  positive hand findings, there was support for somewhat decreased physical functioning in the

22  residual functional capacity, but not nearly to the extent subjectively alleged.").  For instance, the

23  ALJ noted that while Plaintiff testified to extreme limitations related to her fibromyalgia,

24  treatment notes provided "limited support" for her allegations.  (AR 17).  Plaintiff did not exhibit

25  tender points related to fibromyalgia until 2018, and even then, other physical examinations from

26  the same time were negative.  (AR 17, citing Exhibit B1A, p. 10).  The ALJ also highlighted that

27  after a referral for a second opinion related to Plaintiff's complaints, the consulting physician

28  opined that it seemed that Plaintiff did not have fibromyalgia at all.  (AR 18, citing Exhibit B1A,

p. 10).  The ALJ noted that in connection with Plaintiff's prior application, consultative interknit Roger Wagner, M.D. found that while Plaintiff may have some limitations in her physical function, the ALJ noted that the report "did little to bolster the claimant's subjective complaints of chronic, severe, and often debilitating pain," as the examination findings were generally unremarkable.  (AR 18, citing Exhibit B1F).  In short, the ALJ's opinion is replete with examples of "what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell*, 775 F.3d at 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834).

Accordingly, the ALJ's determination that Plaintiff's complaints are inconsistent with the objective medical evidence is a clear and convincing reason for discounting her subjective symptom testimony.  *See Molina*, 674 F.3d at 1113 (concluding that the ALJ properly discredited claimant testimony based on inconsistencies with objective medical evidence); 20 C.F.R. § 404.1529(c)(3).

## V.    CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Rebecca Zahourek.

IT IS SO ORDERED.

Dated:   __**August 26, 2024**__                    _____/s/ *Sheila K. Oberto*_____
                                                            UNITED STATES MAGISTRATE JUDGE